IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| CITIGROUP INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:12cv1389 (GBL/JFA) |
| | ) | |
| CITYCARD.COM, | ) | |
| An Internet Domain Name, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on plaintiff's motion for entry of default judgment
pursuant to Fed. R. Civ. P. 55(b)(2). (Docket no. 17) ("motion for default judgment"). In this *in
rem* action involving <citycard.com> ("the defendant domain name"), plaintiff Citigroup, Inc.
("Citigroup") seeks a default judgment ordering (1) Verisign, Inc. ("Verisign"), as the operator
of the registry for the defendant domain name, to transfer the defendant domain name from its
current registrar to plaintiff's designated registrar, Corporation Service Company ("CSC"); and
(2) CSC to register the defendant domain name in the name of plaintiff and provide plaintiff with
full ownership and control of the defendant domain name.[1] (Docket no. 18-1). Pursuant to 28
U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court his proposed
findings of fact and recommendations, a copy of which will be provided to all interested parties.

## Procedural Background

On December 4, 2012, plaintiff filed its complaint ("Compl.") against the defendant
domain name <citycard.com> for cybersquatting pursuant to the *in rem* provisions of the

---

[1] This is the relief set forth by plaintiff in the [Proposed] Order Entering Default Judgment Pursuant to Fed. R. Civ.
P. 55(b)(2) attached to the memorandum in support of plaintiff's motion for default judgment. (Docket no. 18-1).
As discussed below, plaintiff sought similar relief in the complaint.

Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). (Docket no. 1). Citigroup's complaint sought an order (1) directing Verisign to transfer the defendant domain name from its current registrar to the account maintained by Citigroup with the registrar, CSC; and (2) awarding plaintiff such other and further relief as the court may deem just. *Id.*

On February 6, 2013, plaintiff filed a motion for an order to publish notice of action (Docket no. 6) along with a memorandum in support (Docket no. 7) and a declaration from Thomas M. Williams (Docket no. 7-2) ("Williams Decl."). In the motion for an order to publish notice of action, plaintiff sought an order of the court directing plaintiff to publish notice of this action once in *The Washington Post* in compliance with the ACPA. In support of this proposed relief, plaintiff stated that its counsel sent notice of the alleged violation of the ACPA, notice of plaintiff's intent to proceed under the *in rem* provisions of the ACPA, and a time-stamped copy of the complaint to the registrant of the defendant domain name (Yongki Yu) to the e-mail and postal addresses provided by the registrant to the registrar.[2] (Williams Decl. ¶ 2). On February 7, 2013, an order was entered directing Citigroup to provide notice of this action by publication in accordance with the ACPA. (Docket no. 8). The order providing notice of this action was published in *The Washington Post* on February 15, 2013, and on February 25, 2013, Citigroup filed an affidavit from Andrew E. Smith describing compliance with the order directing publication of notice of this action. (Docket no. 11). Other than the claims made by Citigroup, no response, claim, or other pleading has been filed asserting any right in or to the defendant domain name and the 21-day time period provided in the published notice has expired.

On April 2, 2013, Citigroup filed a request for entry of default as to <citycard.com> (Docket no. 12) supported by an affidavit from Andrew E. Smith attesting that no answer or

---

[2] Plaintiff's counsel sent notice to the registrant Yongki Yu by postal mail on January 3, 2013 to 607-12, 3F, Hanjin B/D, Yeoksam-do, Gangnam-gu, SE 135080, South Korea and by e-mail on January 2, 2013 to <icontents@gmail.com>. (Williams Decl. ¶ 2).

other responsive pleading had been filed in this action on behalf of the defendant domain name (Docket no. 12-1) ("Smith Aff. I" at ¶ 8). The Clerk of Court entered default against <citycard.com> on April 3, 2013. (Docket no. 13). On May 24, 2013, Citigroup filed and served by e-mail its motion for default judgment (Docket no. 17), a memorandum in support of the motion (Docket no. 18), an affidavit in support of the motion from Andrew E. Smith (Docket no. 19) ("Smith Aff. II"), and a notice of hearing for June 21, 2013 (Docket no. 20). On June 21, 2013, counsel for Citigroup appeared at the hearing on the motion for default judgment before the undersigned and no claimant appeared on behalf of the defendant domain name.

### Factual Background

The following facts are established by the complaint (Docket no. 1), the memorandum in support of the motion for default judgment (Docket no. 18), and the affidavit in support of the motion for default judgment (Docket no. 19).

Plaintiff Citigroup is a Delaware corporation with its principal place of business in New York, New York. (Compl. ¶ 4). At the time the complaint was filed, according to the WhoIs domain name registration records, the defendant domain name <citycard.com> was currently registered to a foreign registrant "Yongki" or "Yongki Yu" located in Seoul, South Korea. (Compl. ¶ 5; *see also* Docket no. 1-1). The postal address provided by the registrant to the registrar was 3F, Hanjin, B/D, 607-12, Yeoksam-dong Gangnam-gu, Seoul, South Korea and the e-mail address provided by the registrant to the registrar was <icontents@gmail.com>. *Id.* The registrar for the defendant domain name was Hangang Systems, Inc., d/b/a <doregi.com>, believed to be an entity based in South Korea. *Id.* The defendant domain name, which has a <.com> extension, resides with the registry Verisign, which is responsible for maintaining the <.com> registry and is located in Reston, Virginia. (Compl. ¶ 5).

3

Citigroup is a well-known financial services company that owns an extensive family of federally registered trademarks and service marks including CITI, CITIMILES, CITI PREMIERPASS, CITIGROUP, CITI SIMPLICITY, CITI MOBILE, and CITI THANK YOU ("the CITI marks"). (Compl. ¶¶ 1, 9). Among other applications and registrations owned by Citigroup, Citigroup owns the registrations for the following trademarks: (i) U.S. Trademark Registration No. 1,181,467 for the mark CITI, registered on December 8, 1981, for "financial services – namely, extending consumer and industrial loans to others; factoring services; credit card servicing and the purchasing and servicing of consumer receivables associated therewith; commercial lending; servicing loans and extensions of credit; real estate lending; mortgage financing and mortgage servicing; investment advisory and financial advisory services; providing venture capital to others" (Docket no. 1-2, Ex. 2); (ii) U.S. Trademark Registration No. 1,878,857 for the mark CITIMILES, registered on February 14, 1995, for "incentive award program promoting the use of credit cards" and "credit card services" (Docket no. 1-3, Ex. 3); (iii) U.S. Trademark Registration No. 2,961,545 for the mark CITI PREMIERPASS, registered on June 7, 2005, for "promoting the sale of credit card accounts through the administration of incentive award programs" and "credit card services" (Docket no. 1-4, Ex. 4); (iv) U.S. Trademark Registration No. 2,406,753 for the mark CITIGROUP, registered on November 21, 2000, for "full range of insurance and financial services; banking services; credit card services; securities trading; consulting and underwriting services; investment services" (Docket no. 1-5, Ex. 5); (v) U.S. Trademark Registration No. 3,231,100 for the mark CITI SIMPLICITY, registered on April 17, 2007, for "promoting the sale of credit card accounts, and the goods and services of others, through credit card customer loyalty and reward programs" and for "credit card services" (Docket no. 1-6, Ex. 6); (vi) U.S. Trademark Registration No. 3,555,337 for the

mark CITI MOBILE, registered on December 30, 2008, for "financial services, namely, banking and investment advisory services" (Docket no. 1-7, Ex. 7); (vii) U.S. Trademark Registration No. 3,956,034 for the mark CITI THANKYOU, registered on May 3, 2011, for "promoting the goods and services of others through the administration of incentive reward and redemption programs by distributing rewards for credit and debit card use, and for banking and wealth management customer loyalty" (Docket no. 1-8, Ex. 8). (Compl. ¶¶ 10-16). Each of these registrations is valid, subsisting, in full force and effect, and under the provisions of 15 U.S.C. § 1115, is *prima facie* evidence of the validity of the registered mark. *Id.* In addition, plaintiff's rights in the marks CITI, CITIMILES, and CITIPREMIERPASS have become incontestable pursuant to 15 U.S.C. § 1065. (Compl. ¶¶ 10-12).

Citigroup states that the CITI marks represent to the worldwide consuming public the goods and services offered by plaintiff and its affiliates and/or licensees. (Compl. ¶ 19). Citigroup also contends that in addition to rights to the CITI marks in the United States, it has applied for or registered its marks in approximately 200 countries throughout the world. (Compl. ¶ 18). According to Citigroup, it has made extensive use of the CITI marks by providing its services throughout the United States and around the world, and due to the extensive use and registration of the CITI marks, the CITI marks have become famous both within the United States and abroad. (Compl. ¶ 20). Citigroup's <citicard.com> and <citicards.com> domain names resolve to websites used by Citigroup's existing and prospective customers to obtain information about Citigroup credit cards and credit card services, to access their Citigroup online credit card accounts, and to apply for Citigroup credit cards. (Compl. ¶ 17).

Plaintiff contends that subsequent to its registration of the CITI marks with the United States Patent and Trademark Office ("USPTO"), and without its consent, the registrant registered

and acquired the defendant domain name <citycard.com>. (Compl. ¶ 21). The defendant

domain name is registered to a foreign registrant, Yongki or Yongki Yu, who plaintiff believes is

the person or entity responsible for registering, using, and/or trafficking in the domain name.

(Compl. ¶ 23). The defendant domain name consists of the element "CITY" coupled with the

element "CARD." (Compl. ¶ 24). Because "CITY" is a phonetic equivalent and nearly-identical

misspelling of plaintiff's "CITI" mark, plaintiff contends that "CITI" and "CITY" are legal

equivalents and that "CARD" evokes plaintiff's well-known credit card services. *Id.* As a result,

plaintiff asserts that the defendant domain name is confusingly similar to, and dilutive of, the

famous CITI marks and CITI domain names, and it violates plaintiff's exclusive trademark and

service mark rights in the United States and abroad. *Id.*

Plaintiff further contends that it believes that the registrant of the defendant domain

names received a financial benefit each time an Internet user accessed the websites affiliated

with the defendant domain name. (Compl. ¶ 25). Accordingly, on or about July 28, 2011,

plaintiff filed an arbitration action against the defendant domain name pursuant to the Uniform

Domain Name Dispute Resolution Policy ("UDRP") of the Internet Corporation for Assigned

Names and Numbers ("ICANN"), which is applicable to domain name registration disputes

involving <.com> domains. (Compl. ¶ 26). On or about September 11, 2011, the National

Arbitration Forum issued a decision in plaintiff's favor and ordered the transfer of the defendant

domain name to plaintiff. *Id.* Subsequently, the registrant of the defendant domain name filed

an action with a court in South Korea relating to the National Arbitration Forum's UDRP

decision and transfer order. *Id.* Plaintiff believes that the South Korean court has issued an

order blocking the transfer of the defendant domain name to plaintiff under the UDRP. *Id.*

Plaintiff alleges that the South Korean court did not adjudicate plaintiff's rights under United

6

States law, the United States Trademark Act, or the ACPA. *Id.* As a result, plaintiff contends that the South Korean court's rulings are not relevant to the instant action seeking injunctive relief under the ACPA. *Id.*

Plaintiff contends that as of July 28, 2011, the website that appeared at <citycard.com> displayed various links to credit card services providers, including direct competitors of plaintiff. (Compl. ¶ 27; *see also* Docket no. 1-9, Ex. 9). Plaintiff alleges that the registrant of the defendant domain name subsequently altered the content of that website. (Compl. ¶ 27). As of October 2012, the website available at the defendant domain name displayed various discount card services, which were not affiliated with, sponsored by, or approved by plaintiff. (Compl. ¶ 27; *see also* Docket no. 1-10, Ex. 10). Plaintiff states that these examples demonstrate that the content appearing at the website accessible at the defendant domain name, which incorporates plaintiff's CITI marks without plaintiff's authorization, is beyond plaintiff's control and is likely to cause confusion among consumers. (Compl. ¶ 27).

Plaintiff further argues that the registrant of the defendant domain name had a bad faith intent to profit from its unauthorized use of the CITI marks by diverting consumers from plaintiff's authorized websites to websites available at the defendant domain name, which harms the goodwill represented by plaintiff's CITI marks, for commercial gain, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the website. (Compl. ¶ 30). Plaintiff further alleges that it has suffered, and continues to suffer, irreparable harm to its reputation and goodwill as a result of the registration and ongoing use of the defendant domain name. (Compl. ¶ 33).

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Based on the failure of anyone to file a responsive pleading or claim to the defendant domain name in a timely manner, the Clerk of the Court has entered a default as to the defendant domain name <citycard.com>. (Docket no. 13).

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.

## Jurisdiction and Venue

A court must have both subject matter and personal or *in rem* jurisdiction over a defaulting defendant before it can render a default judgment. Citigroup's claim arises under the ACPA, 15 U.S.C. § 1125(d), and this court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a). (Compl. ¶¶ 1, 6, 7).

The court has *in rem* jurisdiction over <citycard.com> under 15 U.S.C. § 1125(d)(2). The first required element for *in rem* jurisdiction over a domain name is satisfied when the domain name violates any right of the owner of a mark registered with the Patent and Trademark Office. *See* 15 U.S.C. § 1125(d)(2)(A)(i). Citigroup owns several federally-registered

trademarks for the CITI marks, including CITI, CITIMILES, CITI PREMIERPASS,
CITIGROUP, CITI SIMPLICITY, CITI MOBILE, and CITI THANK YOU, and it claims that
its rights in those marks are being violated by the registration and use of <citycard.com>.
(Compl. ¶¶ 10-16, 29).

The ACPA also conditions *in rem* jurisdiction upon a finding that the trademark owner:
(a) is unable to obtain personal jurisdiction over a person who would otherwise be a defendant in
a civil action under the ACPA; or (b) through due diligence cannot find the person who would
have been a defendant in such an action, having sent that person postal and electronic notice of
both the alleged violation and the owner's intent to sue. *See* 15 U.S.C. § 1125(d)(2)(A)(ii).
Given that the current registrant of the defendant domain name, Yongki or Yongki Yu, resides in
Seoul, South Korea and does not appear to have any ongoing business activities in the United
States, Citigroup has established that it is unable to obtain personal jurisdiction over the
registrant of the defendant domain name, who would otherwise be a defendant in this suit.
(Compl. ¶ 5; *see also* Docket no. 1-1).

Venue is proper in this district under 15 U.S.C. § 1125(d)(2)(C)(i), which places venue
for an *in rem* ACPA action in the judicial district in which the domain name's registrar, registry,
or other domain name authority that registered or assigned the domain name is located. Verisign
is the exclusive registry controlling domain names with a top level domain of <.com> and has
offices in Reston, Virginia, within this district and division. (Compl. ¶ 5).

For these reasons, the undersigned magistrate judge recommends a finding that this court
has subject matter jurisdiction over this action, that the court has *in rem* jurisdiction over the
defendant domain name, and that venue is proper in this court.

<u>Service</u>

In support of Citigroup's motion for an order to publish notice of action, Thomas M. Williams executed a declaration (Docket no. 7-2) stating that counsel for Citigroup sent notice of the alleged violation of the ACPA, notice of plaintiff's intent to proceed under the *in rem* provisions of the ACPA, and a time-stamped copy of the complaint to Yongki Yu to the e-mail address provided by the registrant to the registrar (<icontents@gmail.com>) on January 2, 2013 and to the postal address provided by the registrant to the registrar (Yongki Yu, 607-12, 3F, Hanjin B/D, Yeoksam-do, Gangnam, Seoul, South Korea) on January 3, 2013. (Williams Decl. ¶ 2). In addition, on February 6, 2013, Citigroup filed a motion for an order to publish notice of action. (Docket no. 6). Pursuant to the court's February 7, 2013 order to publish notice of action pursuant to § 1125(d)(2)(A)(ii)(II)(bb) (Docket no. 8), Citigroup published notice of this action in *The Washington Post* on February 15, 2013 (Docket no. 11). As set forth in the notice of action, any person claiming an interest in the defendant domain name was required to file an answer or other response to the complaint within 21 days from the date of publication of the order in *The Washington Post*. (Docket no. 8). The 21-day time period for filing an answer or claim expired on March 8, 2013. (Docket no. 11).

The ACPA provides that service of process in an *in rem* action may be accomplished by sending a notice of the alleged violation and intent to proceed under the ACPA to the registrant of the domain name at the postal and e-mail addresses provided by the registrant to the registrar and by publishing notice of the action as the court may direct promptly after filing the action. 15 U.S.C. § 1125(d)(2)(B). Citigroup has complied with these provisions.

For these reasons, the undersigned recommends a finding that service of process has been accomplished in this action.

## Grounds for Entry of Default

Under Fed. R. Civ. P. 12(a), and as stated in the order of publication, anyone asserting a claim to the defendant domain name was required to file an answer or response with the Clerk of the Court by March 8, 2013. No responsive pleading was filed by the named registrant Yongki or Yongki Yu or by anyone else claiming ownership of or any right in the defendant domain name (Smith Aff. II at ¶ 9) and on April 2, 2013, Citigroup filed its request for entry of default. (Docket no. 12). The Clerk of the Court entered a default on April 3, 2013. (Docket no. 13). Upon obtaining default, Citigroup filed its motion for default judgment on May 24, 2013 (Docket no. 17), along with a memorandum in support (Docket no. 18), an affidavit in support from Andrew E. Smith (Docket no. 19) and a notice of hearing for June 21, 2013 (Docket no. 20). Copies of these pleadings were sent to the registrant at the e-mail address provided by the registrant to the registrar (<icontents@gmail.com>) on May 24, 2013. (Docket nos. 17-20).

The undersigned magistrate judge recommends a finding that notice of this *in rem* action was provided properly, that no one filed a responsive pleading or claim to the defendant domain name in a timely manner, and that the Clerk of the Court properly entered a default as to the defendant domain name <citycard.com>.

## Liability and Relief Sought

According to Fed. R. Civ. P. 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because no responsive pleading was filed, the factual allegations in the complaint are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6). The relief sought in the motion for default judgment, as shown in the proposed order attached as an exhibit to the memorandum in support of the motion for default judgment, is for the court to enter an order (1) directing Verisign, the operator of the registry for the defendant domain name, to transfer the domain name from its current registrar to CSC, plaintiff's designated registrar; and

11

(2) directing CSC to register <citycard.com> in the name of plaintiff and provide plaintiff with full ownership and control of the defendant domain name. (Docket no. 18-1). The notice that was published pursuant to the ACPA provided that one of the remedies available under the ACPA was transfer of the defendant domain name to plaintiff in this action. (Docket no. 8).

To state a claim under the ACPA, Citigroup must prove that the defendant domain name and/or its registrant registered, trafficked in, or used a domain name with the bad faith intent to profit and that the domain name is either identical or confusingly similar to a distinctive mark owned by Citigroup, or, upon a finding that a mark owned by Citigroup is famous, that the domain name is identical or confusingly similar to, or dilutive of, Citigroup's famous mark. *See* 15 U.S.C. § 1125(d)(1)(A); *see also People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). The registration of the CITI marks is *prima facie* evidence that the marks are at least descriptive and have acquired distinctiveness. *America Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001). Further, secondary meaning is typically found where there are extensive advertising expenditures, sales successes, attempts to plagiarize a mark, and where a mark has been used exclusively for an extended period of time. *See, e.g.*, *Perini Corp. v. Perini Constr. Inc.*, 915 F.2d 121, 125 (4th Cir. 1990).

Here, Citigroup has obtained several registrations for the CITI marks, as shown in the complaint and in exhibits 2-8 to the complaint. (Compl. ¶¶ 10-16; *see also* Docket nos. 1-2 - 1-8). Citigroup states that it is a leading provider of financial services in the United States and worldwide, including Internet banking and other financial services through domain names such as <citi.com>, <citibank.com>, <citibankonline.com>, <citicard.com>, and <citicards.com>. (Compl. ¶ 1). Citigroup asserts that its CITI marks represent to the worldwide consuming public the goods and services offered by it and/or its licensees. (Compl. ¶ 19). Citigroup has used the

CITI mark in commerce since at least as early as 1981 when the CITI mark was registered. (Compl. ¶ 10). Citigroup also contends that it has made extensive use of the CITI marks by providing its services throughout the United States and around the world, and due to the extensive use and registration of the CITI marks, the CITI marks have become famous both in the United States and abroad. (Compl. ¶ 20). Further, Citigroup asserts that it has spent substantial sums advertising the CITI marks. (Compl. ¶ 1). For these reasons, the undersigned magistrate judge recommends a finding that the CITI marks are at least distinctive.

The next consideration is whether <citycard.com> is identical or confusingly similar to the CITI marks. Based on the uncontested allegations in the complaint, the undersigned magistrate judge recommends a finding that the defendant domain name is confusingly similar to the CITI marks. Further, the registration and use of the defendant domain name by the registrant is likely to cause confusion among the public, including customers of Citigroup, because the "dominant or salient portions" of the CITI mark and the defendant domain name are nearly identical. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 936 (4th Cir. 1995). Accordingly, "a finding of likelihood of confusion is appropriate despite the fact that collateral portions of the mark may differ." *Atlas Copco AB v. Atlascopcoiran.com*, 533 F. Supp. 2d 610, 614 (E.D. Va. 2008) (finding that the addition of generic geographic terms to plaintiff's registered mark did not distinguish the defendant domain names from the registered marks) ("An internet user might reasonably assume that the geographic term 'CASPIAN' and 'IRAN' were added to the ATLAS COPCO trademark by the Plaintiffs to identify its geographic location.").

In this case, the defendant domain name consists of the element "CITY" coupled with the element "CARD" where "CITY" is a phonetic equivalent and nearly-identical misspelling of plaintiff's "CITI" mark. (Compl. ¶ 24). As "CITI" and "CITY" are legal equivalents and

13

"CARD" evokes plaintiff's well-known credit card services, plaintiff asserts that the defendant domain name is confusingly similar to, and dilutive of, the famous CITI marks and CITI domain names. *Id.* Moreover, as of July 28, 2011, the website appearing at the defendant domain name displayed various links to credit card service providers, including direct competitors of plaintiff, and as of October 2012, the website available at the defendant domain name displayed various discount card services, which are not affiliated with, sponsored by, or approved by plaintiff. (Compl. ¶ 27). Based on a simple comparison of the CITI marks and the defendant domain name and the fact that similar credit card services have been offered under the CITI marks and on the websites available at the defendant domain name, it seems that any use of the defendant domain name by someone other than Citigroup could cause confusion. Thus, Citigroup has shown that the defendant domain name is confusingly similar to the CITI marks.

Having recommended a finding that the CITI marks are distinctive and that <citycard.com> is confusingly similar to the CITI marks, the remaining question is whether the defendant domain name was registered or used with the bad faith intent to profit. For at least the following reasons, the undersigned recommends a finding that the defendant domain name was registered and used with the bad faith intent to profit from the CITI trademarks:

     1.     The CITI mark, which has been incorporated into <citycard.com> insofar as "CITY" is a phonetic and legal equivalent of "CITI," is distinctive within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(IX);

     2.     The registrant of the defendant domain name does not have any valid trademark or intellectual property rights in the CITI marks or the defendant domain name within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(I);

3.     It appears that the defendant domain name does not consist of the registrant's legal name, nor does it in any way identify the registrant within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(II);

4.     The registrant of the defendant domain name has not used the defendant domain name in connection with the *bona fide* offering of any goods or services within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(III) in that the registrant does not have any rights to use the CITI marks and the defendant domain name is not being used to sell Citigroup's services, the only *bona fide* use of the CITI marks;

5.     The registrant has not used the defendant domain name for *bona fide* noncommercial purposes or within the fair use provisions of 15 U.S.C. § 1125(d)(1)(B)(i)(IV); and

6.     The registrant's intent in obtaining and maintaining the registration for the defendant domain name and using the domain name, despite the adverse finding by the National Arbitration Forum in September 2011 and notice from Citigroup that the domain name infringes on the CITI marks, was to divert Citigroup's customers and to profit from the goodwill of the CITI marks, within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(V).

The ACPA provides that, upon a finding of a violation, the court has discretion to cancel the domain name registration or order it transferred to the trademark owner. 15 U.S.C. § 1125(d)(1); *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 232 (4th Cir. 2002) ("Transfer or cancellation of the defendant domain name[] is the only remedy available under § 1125(d)(2)'s *in rem* provision").

For these reasons, the undersigned magistrate judge recommends a finding that the registrant's actions have violated the ACPA. The undersigned further recommends that an order

be entered requiring (1) the registry Verisign to change the registrar of record for the defendant domain name to CSC, plaintiff's designated registrar; and (2) CSC to take the necessary steps to register the defendant domain name in the name of plaintiff.[3]

## Conclusion

For the foregoing reasons, the undersigned recommends that a default judgment be entered in favor of Citigroup, Inc. and against the defendant domain name <citycard.com>. The undersigned further recommends that the court enter an Order requiring Verisign, Inc. to change the registrar of record for <citycard.com> to Corporation Service Company or such other registrar as specified by plaintiff and requiring Corporation Service Company to take the steps necessary to register <citycard.com> in the name of Citigroup, Inc.

## NOTICE TO PARTIES

Failure to file written objections to these proposed findings of fact and recommendations within fourteen (14) days after being served with a copy of the proposed findings of fact and recommendations may result in the waiver of any right to a *de novo* review of the proposed findings and recommendations and such failure shall bar you from attacking on appeal any findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error. A copy of these proposed findings of fact and recommendations shall be sent to the registrant of the defendant domain name Yongki Yu at 607-12, 3F, Hanjin B/D, Yeoksam-do, Gangnam-gu, Seoul, South Korea and by e-mail at <icontents@gmail.com>.

ENTERED this 21st day of June, 2013.

_____ /s/ _____
John F. Anderson
United States Magistrate Judge
John F. Anderson
United States Magistrate Judge

Alexandria, Virginia

---

[3] This proposed relief differs slightly from the relief requested in the motion for default judgment and it was discussed with and agreed to by plaintiff's counsel during the hearing on June 21, 2013.